IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2010

## ALFRED EUGENE BRADLEY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 254328      Rebecca J. Stern, Judge**

_____

**No. E2009-02503-CCA-R3-PC - Filed October 27, 2010**

_____

The Petitioner, Alfred Eugene Bradley, filed a petition for post-conviction relief, raising numerous claims of ineffective assistance of counsel.  After a hearing, the post-conviction court denied the petition, finding that trial counsel was not ineffective, and the Petitioner timely appealed.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Ardena J. Garth and Richard Kenneth Mabee (on appeal) and Jonathan Turner (at trial), Chattanooga, Tennessee, for the appellant, Alfred Eugene Bradley.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William H. Cox, III, District Attorney General; and Bates Bryan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The Petitioner was convicted by a jury of four counts of attempted first degree murder, aggravated arson, false imprisonment, assault, and theft under $500.  After a sentencing hearing, the trial court imposed a total effective sentence of twenty-two years and six months in the Tennessee Department of Correction.  On February 5, 2004, this court affirmed his convictions, summarizing the proof at trial as follows:

The convictions in this case stem from three separate indictments issued by the Hamilton County Grand Jury against the [Petitioner], Alfred Eugene Bradley, in which he was charged with the May 23, 2000, theft of property from the duplex of his former girlfriend, Audrey Thompson; the May 25, 2000, kidnapping and assault of Thompson; and the June 3, 2000, aggravated arson of Thompson's duplex and attempted first degree murder of Thompson's three children and her male friend, Blevins Espey.

. . . .

The evidence at trial showed that the [Petitioner] was angry at Thompson for ending their relationship and jealous at the thought of her with another man. Approximately one week before the fire, the [Petitioner] threatened Thompson's children in a conversation with Thompson's next-door neighbor [Latiki Pankey]. At roughly the same period of time, on May 25, 2000, the [Petitioner] forced Thompson into his car and drove her around against her will, at the same time telling her that he loved her and wanted a chance to start over with her. On the evening before the fire, the [Petitioner] telephoned Thompson's house over twenty times and, in one of his conversations with her, threatened to kill her if he discovered that she was with another man. Approximately five minutes after Thompson left the house [at 3:00 or 4:00 a.m.], someone standing outside the house broke a window in Thompson's bedroom, where her male friend was staying, and a window in a second bedroom, where two of Thompson's three children were sleeping, and threw or poured a gasoline range product inside, setting the house on fire. Broken glass and blood found at the scene suggested that the arsonist cut himself in the process of setting the fire.

The [Petitioner] was found shortly after the fire lying on a nearby street with a severely cut arm. A trail of blood led from the pools of blood where the [Petitioner] was found back toward the scene of the fire. The [Petitioner] told the paramedic who treated him that he had cut his arm on glass and twice answered in the affirmative when asked, first by a police officer and then by the fire investigator, if he had cut himself starting the fire.

-2-

Finally, a gasoline range product was present on the [Petitioner's] clothing.

State v. Alfred Eugene Bradley, No. E2002-02840-CCA-R3-CD, 2004 WL 223399, at **1, 8 (Tenn. Crim. App. at Knoxville, Feb. 5, 2004). On September 7, 2004, our supreme court denied permission to appeal.

Subsequently, the Petitioner filed a timely petition for post-conviction relief, post-conviction counsel was appointed, and an amended post-conviction petition was filed. In the amended petition, the Petitioner claimed that counsel failed to properly investigate his case, failed to impeach two state witnesses with their prior convictions for crimes of dishonesty, failed to investigate an alibi defense, failed to object to hearsay evidence, failed to question Thompson about her motive for committing the arson, failed to submit a written memorandum concerning mitigating evidence and to develop mitigation evidence at the sentencing hearing, failed to challenge the Petitioner's convictions for attempted first degree murder and aggravated arson on double jeopardy grounds, and failed to argue that the trial court's application of enhancement factors violated Blakely v. United States, 542 U.S. 296 (2004).

At the post-conviction hearing, the Petitioner's trial counsel testified that although the Petitioner was initially represented by other attorneys, she represented him in general sessions court and at trial. She could not recall how many times she met with the Petitioner prior to trial, but she opined that the number of meetings was sufficient for the preparation of the case.

Counsel recalled that the Petitioner's prior attorneys had a mental evaluation performed on the Petitioner and that he was found competent to stand trial. Counsel said the Petitioner did not provide much information to assist in his defense of the aggravated arson and attempted first degree murder charges. He said he did not recall how he came to be two blocks from the fire at the end of a trail of blood leading back to the crime scene or why he smelled of gasoline. Counsel maintained that she did not detect any "mental defect" which would have impeded the Petitioner's memory, and she questioned the Petitioner's candor and willingness to tell her what transpired on the night of the arson.

Counsel stated that the Petitioner told her that earlier on the evening of the fire, he smoked crack and went to two bars, the Player's Club and Dagwoods, where he sang karaoke and consumed a beer, a White Russian cocktail, and several other drinks. However, she was unable to definitively establish the Petitioner's presence at either bar at the time the arson was committed. Counsel stated that she would have pursued an alibi defense had one been available. Counsel noted that an alibi defense was compromised by the discovery of the

Petitioner, not long after the arson, passed out, bloody, and with gasoline on his clothes. The Petitioner was found at the end of a trail of blood leading back to the scene. Counsel stated that the Petitioner faced "pretty tough facts" that were difficult to overcome.

Counsel recalled that she interviewed witnesses and extensively cross-examined the witnesses at the preliminary hearing and at trial. She said that she routinely performed "background checks" on trial witnesses, which would have revealed that Thompson had a prior conviction for criminal impersonation and that Pankey had a prior conviction for misdemeanor theft. She said she could not specifically recall why she chose not to impeach either witness with their prior convictions. However, she recalled that her cross-examination of both witnesses was so "contentious" that she feared she was dangerously close to alienating some members of the jury. She surmised that she abandoned impeachment to focus on more substantive matters to avoid further problems with the jury and that she was able to discredit the victim without the impeachment evidence.

Counsel said that she was aware that Thompson had some money that was burned in the fire and that Thompson wanted to go into the house to get the money. Counsel stated that the Petitioner was not able to substantiate his claim that Thompson was involved in "money laundering."

Counsel admitted that she did not submit a written sentencing memorandum to the trial court, but she opined that the lack of a memorandum did not affect the trial court's decision in sentencing the Petitioner. Counsel acknowledged that she did not pursue a Blakely claim, explaining that Blakely was not released until well after the Petitioner's sentencing hearing. Counsel stated that she did not believe the Petitioner's double jeopardy claim had merit.

The Petitioner's sister, Mary Smith, testified that at counsel's request, she testified for the Petitioner at his sentencing hearing. Smith stated that she had never met or spoken with counsel until the day of the sentencing hearing and that counsel did not prepare her to testify. Smith said she testified about the Petitioner's traumatic childhood.

The Petitioner testified that he had been in custody since June 2001 and that his trial was held in May 2002. During that time, he had two or three meetings with counsel, and each meeting lasted less than thirty minutes. He did not recall going over the evidence with counsel. The Petitioner stated that he was aware of only the witnesses who were listed on the true bill and that counsel never asked him if there were other witnesses she should interview. The Petitioner maintained that counsel did not discuss the sentencing hearing with him and did not contact him in the interim between trial and the sentencing hearing.

The Petitioner told counsel "that [he] was at Player's Club first then [he] wound up at Dagwoods and that was [his] alibi and next thing [he knew he] was in the hospital." He told counsel the names of the songs he sang during karaoke and described the people with whom he sang. The Petitioner said he had no memory of the events which occurred from the time he was at Dagwoods and the time he was hospitalized. The Petitioner maintained that both bars had gone out of business since his incarceration.

The Petitioner said, "At the time me and [counsel] discussed anything I was under medication for depression and I really just don't remember just talking about [being found bloody near the scene] at all." The Petitioner stated that he was probably in the area of the fire to purchase drugs. When asked if he ever gave counsel an explanation for his presence at the end of a trail of blood leading from the scene of the fire, the Petitioner responded that "they never determined it was my blood."

At the end of the hearing, the post-conviction court found that counsel was not ineffective and dismissed the petition. The Petitioner appealed to this court, and we remanded to the post-conviction court "to permit the post-conviction court to enter a final order or memorandum addressing all grounds presented with factual findings and legal conclusions in compliance with Tennessee Code Annotated section 40-30-111(b)." Alfred Eugene Bradley v. State, No. E2008-00829-CCA-R3-PC, 2009 WL 2870178, at *2 (Tenn. Crim. App. at Knoxville, Sept. 3, 2009).

On remand, the post-conviction court entered an order, again finding that the Petitioner failed to prove that his counsel was ineffective. Specifically, the post-conviction court found that the Petitioner had no proof of his whereabouts at the time of the fire; therefore, an alibi defense was not viable. The court also found that there was sufficient evidence to corroborate Thompson's testimony, noting that "there was reason to accept her account, despite the prior conviction for criminal impersonation, as reliable." The post-conviction court stated that the evidence of the Petitioner's guilt was overwhelming; therefore, "any deficiency in counsel's performance . . . was not prejudicial." The post-conviction court noted that proof presented at the sentencing hearing was "not complex and was comprehensible and credible" and that a sentencing memorandum was not necessary. The court found that there was no merit to the Petitioner's double jeopardy argument. Further, the court found that counsel was not ineffective in failing to raise a Blakely issue, noting that Blakely was released while the Petitioner's application for permission to appeal was pending and because "the broad implications of Blakely [were] not . . . immediately apparent and [were] only apparent with further developments in the law." The Petitioner appeals the post-conviction court's ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

On appeal, the Petitioner raises eight claims of ineffective assistance of counsel. First, the Petitioner alleges that "[t]rial counsel was ineffective in that she was not adequately prepared to defend Petitioner on said charges nor did she conduct a proper investigation which unduly prejudiced Petitioner." We note that the Petitioner did not present any new evidence at the post-conviction hearing which could have been discovered upon further investigation. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Moreover, trial counsel testified that, considering the abundance of proof against the Petitioner and his purported memory failure concerning his whereabouts at the time of the fire, defending the Petitioner against the charges was extremely difficult. The Petitioner has not established that counsel's performance was deficient.

Next, the Petitioner contends that "[t]rial counsel was ineffective in that she did not impeach a state's witness where the record clearly reflects that counsel had knowledge of her impeaching crime." Specifically, the Petitioner maintains that trial counsel should have impeached both Thompson and Pankey with their prior crimes of dishonesty. The post-conviction court found that Thompson's testimony was sufficiently corroborated at trial so that impeaching her with a prior conviction for criminal impersonation would have had an imperceptible effect on the trial. Specifically, the court noted that the victim's testimony regarding the Petitioner's jealous anger after their relationship ended was consistent with the Petitioner's ejection from her home, his theft of property, and his subsequent telephone calls. There is nothing in the record to preponderate against the court's finding. The court noted that Pankey's testimony "though corroborative, [was] not . . . critical to the state's theory, [therefore] . . . the impeachment of the witness [was not] critical." Additionally, trial counsel testified that she did not pursue impeachment for fear that she would alienate the jury by attacking the witnesses and that she was able to discredit the victim without using the prior conviction. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsels' behavior by "20-20 hindsight." See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Therefore, the Petitioner is not entitled to relief on this basis.

The Petitioner contends that "[t]rial counsel was ineffective in that she did not investigate the alibi of the Petitioner when he informed her he was at two different bars singing karaoke when the crimes were committed." Essentially, the Petitioner claims that trial counsel should have investigated and pursued an "alibi" defense. However, he acknowledged that he did not know how he got from Dagwoods to the hospital and that he was unable to substantiate his whereabouts at the time of the fire. Moreover, trial counsel stated that she questioned the Petitioner's candor in claiming his memory of the night in

question was faulty. Additionally, the Petitioner, after being found passed out near the fire, acknowledged to two officers that he was involved in the fire. The Petitioner presented no witnesses at the post-conviction hearing to support his alibi claim. The post-conviction court found that the Petitioner was not entitled to relief. We agree.

The Petitioner maintains that "[t]rial counsel was ineffective in that she did not properly object to hearsay during direct examination." Specifically, the Petitioner states that counsel should have objected when Pankey testified that the Petitioner cut Thompson's waterbed, an event of which Pankey could not have first-hand knowledge. The post-conviction court observed that the Petitioner did not pursue at the post-conviction hearing the issue of Pankey's hearsay testimony. The record reflects that this testimony also came in during the testimony of Thompson and Officer Weary. Therefore, any objection to Pankey's testimony would have had a negligible effect on the trial. The Petitioner has failed to establish that counsel was ineffective in this regard.

The Petitioner argues that "[t]rial counsel was ineffective in that she did not properly develop motive testimony during cross-examination of Audrey Thompson." The Petitioner alleges that trial counsel should have developed through cross-examination that Thompson had motive to set fire to her own home because of her involvement in money laundering. However, the Petitioner presented no evidence to support this allegation and has therefore failed to establish trial counsel's ineffectiveness regarding this issue.

The Petitioner maintains that "[t]rial counsel was ineffective in that she did not submit any written reports of the [Petitioner's] mitigating evidence for the sentencing phase of trial nor did trial counsel properly develop mitigation evidence at the sentencing hearing." The post-conviction court observed that trial counsel's performance during the sentencing hearing was sufficient and that written sentencing memoranda would not have changed the outcome of the hearing. There is no evidence in the record to preponderate against this finding.

The Petitioner contends that "[t]rial counsel was ineffective in that she did not raise a Double Jeopardy issue at any stage of this case which in turn cause the Petitioner to waive this issue." He asserts that counsel should have challenged his convictions for aggravated arson and attempted murder on double jeopardy grounds. Counsel testified that the double jeopardy argument was meritless. The post-conviction court agreed, stating "that the offenses are not the same for double jeopardy purposes." We agree and conclude that the Petitioner has not established that trial counsel was ineffective.

Finally, the Petitioner argues that trial counsel's failure to raise a Blakely claim on appeal was ineffective. A brief recitation of the chronology of events is necessary to our analysis of this issue.

The Petitioner was convicted on November 4, 2002. This court's opinion in the Petitioner's direct appeal was issued on February 5, 2004. On February 23, 2004, trial counsel's motion to withdraw from representation pursuant to Rule 14 of the Rules of the Supreme Court of Tennessee was granted. On April 6, 2004, the Petitioner, acting pro se, filed an application for permission to appeal to our supreme court. On June 24, 2004, while the application was pending, the United States Supreme Court released its opinion in Blakely, holding that "the 'statutory maximum' . . . is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" Blakely, 542 U.S. at 304. Our supreme court denied the Petitioner's application on September 7, 2004.

The Petitioner's complaint is that counsel failed to "raise a Blakley issue" and that as a result of counsel's failure, the issue was waived. However, in his post-conviction petition and in his appellate brief, the Petitioner acknowledges that he acted pro se in filing his Rule 11 petition to the supreme court. Further, in his post-conviction petition, the Petitioner stated that he raised a Blakely issue in his Rule 11 application, thereby preserving the issue. Moreover, we note that counsel had already withdrawn from representation at the time Blakely was released. Accordingly, we conclude that counsel was not ineffective in this regard.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE